## Bond et al. v. W. T. Congleton Co.

June 2, 1939.

A. T. W. Manning for appellants.

Allen, Duncan & Duncan for appellee.

Opinion of the Court by Judge Fulton—Affirming.

The petition of appellee, Congleton Company, alleged that William Pettit, owner of two adjacent lots on Main Street in Lexington, contracted with appellee for the construction of a building thereon and agreed to pay therefor the actual cost of labor and materials and, in addition thereto, 10 per cent of the total aggregate thereof; in short, that the building was contracted for on a cost plus basis; that work began under the contract in June, 1934, and it continued to furnish labor and materials until December 5, 1934, at which

time the construction of the building was completed; that on February 23, 1935, it asserted a mechanic's lien upon the property for a balance due, this balance being 10 per cent of the cost of labor and materials; that a controversy arose between it and Pettit relative to this balance and the controversy was submitted to arbitration, and that arbitrators found Pettit indebted to it in the sum of $4,356.58, which Pettit had failed and refused to pay.

The petition also set out that the property was subject to a mortgage dated August 10, 1934, duly recorded, in favor of appellant, Martha Bond, as trustee for W. M., Samuel and N. U. Bond, Jr., she being made a party defendant to the suit.

It was alleged that the mechanic's lien asserted by it was prior and superior to the mortgage lien of appellant; that appellant had full notice and knowledge of the contract existing between it and Pettit and of the estimated costs that would be required in the construction and erection of the building, and that the defendant had notice and knowledge of the right of appellee to a lien on the property for such amount as might be due it on account of the erection and construction of the building; that appellant had full notice that plaintiff had furnished considerable labor and materials in the improvement of the property and construction of the building. Summons was executed on appellant on February 26, 1936, five days after the filing of this petition.

On March 14, 1936, Pettit filed answer; demurrer was sustained thereto on June 26, 1937. Several months later, amended answer was filed by Pettit and on October 29, 1937, demurrer was sustained to the answer as amended.

On November 4, 1937, motion was made to take the allegations of the petition for confessed and also to refer to the master commissioner to report liens. On November 6, an order was entered taking the allegations for the petition for confessed and on November 13 appellee was granted a personal judgment against Pettit and adjudged a lien upon the property prior and superior to the mortgage lien of appellant. By this judgment the cause was referred to the commissioner to ascertain and report the amount of the mortgage debt of appellant and November 22, 1937 was fixed as the time for taking proof before the commissioner. A

copy of this judgment was affixed to appellant's front door and another copy was sent to her in Florida by registered mail.

On December 1, 1937, appellant for the first time appeared in the action and filed motion to set aside so much of the judgment as adjudged a prior lien to appellee and tendered an answer and moved to be permitted to file same. In support of her motion she filed the affidavit of her husband, N. U. Bond.

The substance of the affidavit filed was that appellant had not theretofore appeared in the action because she had been informed and believed it was only a controversy between appellee and Pettit and that she did not know that it would be necessary for her to appear in the litigation until a few days before the answer was offered, when she had discovered for the first time that appellee was claiming a lien prior and superior to her mortgage. It is stated in the affidavit that she had been in Florida since October 1, 1937 and that her attorney did not reside in Lexington but lived some 80 miles therefrom.

In opposition to the motion to set aside the judgment, appellant filed the affidavit of W. T. Congleton stating that after summons was executed on appellant he had a conversation with N. U. Bond about the litigation in which Mr. Bond told him that they intended to let the action take its course without appearing in it, as they did not want to incur any expense and believed the property was sufficient to satisfy both the mortgage and appellee's lien claim.

The answer tendered by appellant set out the execution and delivery of the mortgage by Pettit to her by the terms of which she paid off a $30,000 existing lien on the property and was to advance $60,000 additional as the construction of the building advanced; that the building was to be completed on November 1, 1934, at which time Pettit was to execute to her a promissory note for $90,000.

It is alleged that the mortgage provides that the sum of $60,000 included in the $90,000 was to be used for the construction and completion of the building in such amounts and at such times as construction progressed and in payment for work actually done and materials placed upon the premises for use in construction of the building "as are shown by the verified esti-

mates of the builders and the verified invoices covering the materials and the verified payrolls for labor for any period during the construction of the said building''.

The answer then sets out a number of itemized statements and invoices of labor and material signed by appellee, and presented by it to Pettit and by him to appellant. The following allegation appears in the answer as to the final itemized statement and invoice:

"This defendant further says that thereafter and on November 15, 1934, the plaintiff and defendant, William Pettit, presented another itemized statement to the answering defendant amounting to the sum of $2,872.48, and bearing the written endorsement of the plaintiff, as follows:

" 'This invoice includes labor and materials furnished and paid for by us upon the Sears Roebuck building up to and including Thursday, November 15, 1935.

" 'W. T. Congleton Company
" 'By W. T. Congleton, Pres.'

"November 17, 1934

"And also bearing the written endorsement of the defendant, William Pettit, as follows: 'Sec. in full for labor and material to date.

" '[Signed] William Pettit.' "

The answer then alleges that appellant was induced to pay the amount of all the invoices to appellee upon the representations and written statements (the invoices) and that same included and paid in full for all labor and material claimed by appellee up to and including the respective date of the endorsements on each of the itemized statements; that on November 17, 1934, after the completion of the building, appellant was induced to and did pay to the defendant, Pettit, the remaining unexpended portion of the $60,000, viz., $3,358.09, believing and relying on the said representations and written statements of the appellee and defendant, Pettit, that all labor and material costs on the building had been fully paid up to and including said date; that by reason of all these facts the appellee is estopped from asserting a lien against the property superior to the mortgage lien of appellant.

Appellant contends that the court was in error in adjudging appellee a lien, because its claim for 10 per

cent on the cost of material and labor is not a lienable claim under Section 2463, Kentucky Statutes, which provides:

"Section 2463. * * * A person who performs labor or furnishes material in the erection, altering or repairing a house, building or other structure * * * by contract with * * * the owner * * * shall have a lien thereon * * * to secure the amount thereof with cost. * * *"

The cases of Steele & Lebby v. Flynn-Sullivan Co., 245 Ky. 772, 54 S. W. (2d) 325, and Henry Bickel Co. v. National Surety Co., 156 Ky. 695, 161 S. W. 1113, are relied on by appellant to sustain this contention, but we do not regard those cases as controlling. The principle enunciated in them is that rent due for a crane or a traction engine or other appliance used in performance of a construction contract are not lienable claims.

We find the rule stated in 40 C. J., p. 77, as follows:

"Profits and commissions are not lienable items, unless included in the contract price, as where the contract provides for payment of the cost of, or reimbursement for the amount actually paid out for, labor and material, plus a certain percentage as commissions, profit, or compensation. * * *"

Numerous cases are cited in support of the principles stated in the text and we are in accord with the principles laid down therein. The contractor himself necessarily performs labor in the purchasing of and paying for material and in furnishing and paying for the necessary labor in the construction of a building and it appears reasonable to us that labor thus performed by the contractor is lienable to the same extent as any other labor that goes into the building where the contract provides for the payment of a definite percentage as compensation for this labor to be performed by the contractor.

We reach the conclusion that appellee's claim for 10 per cent on the cost of materials and labor is a lienable claim under the statute.

The next question presented is whether or not, under the circumstances above outlined, the trial court should have set aside the default judgment and permitted the appellant to file the tendered answer. The policy of the courts is to adopt a liberal attitude in setting

aside default judgments during the term at which they were rendered and permitting defense to be made, South Mountain Coal Co. v. Rowland, 204 Ky. 820, 265 S. W. 320, Hackney v. Charles, 220 Ky. 574, 295 S. W. 869, and a party applying to have a default judgment set aside is not required to show himself strictly entitled to the legal relief under Code provisions regulating the granting of new trials. Southern Ins. Co. v. Johnson, 140 Ky. 485, 131 S. W. 270.

However, this liberal attitude has never been extended to the point of declaring that a party is entitled to have a default judgment set aside as a matter of right. It is only when he shows a reasonable excuse and establishes that he has not been guilty of unreasonable delay or neglect that the discretion of the trial court should be exercised in setting aside a default judgment and permitting defense to be made.

In Kengreen Gas Utilities Corporation v. Crozer, 244 Ky. 440, 51 S. W. (2d) 262, 264, after pointing out this liberal attitude of the courts toward setting aside default judgments and permitting defense, it was said:

"When there appears no mitigating circumstances to excuse his failures, and no unfair action or conduct on the part of his adversary is shown, and no other excuse offered other than mere neglect and gross inattention to the process of the court, the opinions relied on, while acknowledging the leniency referred to, do not authorize us in sustaining the motion under the facts developed by this record. The suit was filed more than two months before the default judgment was taken, and service was had for nearly a month prior thereto. It appears that the local attorney of defendant soon became possessed with knowledge of the filing of the action, and the resident process agent notified defendant at its home office in more than sufficient time to enable it to take some action in the matter. To sustain the contention of counsel in this case and to set aside that judgment would be to ignore and to cast aside all rules of practice that have been promulgated and applied for the stability of judgments and for respect of courts and their processes. If such a rule should be approved under the facts of this case, litigants could utterly disregard the process of the court and obstructively consume its

time in reconsidering matters already passed on, and which they could have prevented by the exercise of the slightest diligence.''

The above language is peculiarly applicable here. The appellant waited a year and a half after summons was executed and after many steps had been taken in the litigation, including the entry of judgment, before deciding to make a defense. She employed no counsel at the beginning of the litigation and was evidently looking to her co-defendant, Pettit, to attend to her interests in the litigation. The affidavit of appellant's husband, even though it be considered competent, shows no excuse except that she had been informed and believed that the controversy was between appellee and Pettit. Such information was not alleged to have come from appellee or its attorney, nor is the source of the information given, nor does it appear by this affidavit that the appellant was in any way misled or induced not to make defense by any act or conduct on the part of the appellee.

The affidavit of W. T. Congleton filed in opposition to the motion to set aside the judgment states that appellant's husband, shortly after summons was served, informed him that Mrs. Bond intended to ignore the action and would not file any pleading, assigning as a reason therefor the belief that the property was amply sufficient to satisfy both appellants' and appellee's claims, and that they did not desire to incur any expense in the matter. The statements made in this affidavit are not denied or disputed by appellant or her husband.

Accepting the statements in this affidavit as true, which we must do in the absence of any denial, it is apparent that appellant deliberately ignored the litigation and only attempted to come into the case after it appeared that there might be a possibility of her sustaining a loss. In short, no excuse is offered for her failure to answer except her own neglect and gross inattention to the process of the court. Under these circumstances, therefore, we are of the opinion that the trial court did not abuse its discretion in refusing to set aside the default judgment and permit the answer to be filed.

The judgment is affirmed.

The whole court sitting.