## ESCH v. LEITHEISER.

[No. 17,523. Filed December 4, 1946. Rehearing Denied January 10, 1947. Transfer Denied April 9, 1947.]

340

*Francis A. Shaw* and *Lesh & Lesh,* all of Muncie, and *Cecil A. Taylor,* of Indianapolis, for appellant.

*Haymond & Pierce,* of Muncie, for appellee.

DRAPER, J.—The appellee filed a complaint alleging that the appellant occupied, as a tenant under a written lease with appellee, a certain house and lot in Muncie, Indiana, owned by appellee. It alleged appellant's failure to pay one installment of rent due in advance, and also alleged the termination of appellant's tenancy by written

demand for possession more than one month prior to the date upon which possession was demanded.

Appellant's answer admitted execution of the rental agreement, but alleged herself to be the equitable owner of the real estate and not a tenant. It further alleged that the appellee was not the owner of the real estate, but was actually a mortgagee thereof to secure an indebtedness owing from the appellant. It further alleged a tender of all amounts due before suit was brought, and that the appellant had accepted payments due after suit was brought. Appellee replied by way of denial.

The court found the facts specially, stated conclusions of law thereon, and by its judgment awarded appellee the possession of the real estate and $420 damages for the unlawful detention thereof.

We summarize the facts as found by the court as follows: The appellant owned the real estate in 1934 and mortgaged it to the HOLC, which corporation foreclosed and received a sheriff's deed in May, 1937. On January 26, 1938, HOLC and the appellant entered into an agreement of lease with option to purchase, whereby the payment of $2000 by the appellant was acknowledged and she was given the right to purchase the real estate from HOLC during the effective period of the lease, at a stated price less the $2000 and a sum equal to the rentals paid.

On the same day, to secure a loan of $1200 from the appellee, the appellant assigned said lease-option agreement to appellee by a writing which provided that on default in the payment of the note, appellee should become the owner of appellant's interest in said lease-option agreement and should have the right to pay and receive a deed from HOLC.

On March 11, 1940, proceedings were pending to

cancel appellant's lease with HOLC because of her default, the appellee loaned appellant an additional $900.04 on her note to save the property, and both notes were secured by an assignment of the lease-option agreement, which reserved to the appellant the right to pay her obligation to appellee and recapture her rights in the premises.

On December 13, 1940, the appellant executed a quit claim deed for said real estate to the appellee. The deed contained a recital to the effect that it was an absolute conveyance, transfer and assignment of all rights of the grantor in and to the real estate; that it was not intended as a mortgage, trust conveyance or security of any kind; that the consideration thereof was a full release of all debts, obligations, costs and charges theretofore subsisting against the grantor in favor of the grantee, and in particular the two notes above mentioned; and that all said obligations were completely satisfied by the conveyance. She also unconditionally assigned to the appellee all her right, title and interest in the HOLC lease-option agreement, and signed and delivered to appellee an affidavit in which she stated that the consideration for the deed was the cancellation of her obligation to appellee; that the deed was an absolute conveyance in effect as well as form and was not intended as a mortgage, trust conveyance or security of any kind; that the cancellation of her obligation was a fair consideration for her interest in the real estate; and that she had executed the deed without duress, misrepresentation or undue influence.

Three days later, on December 16, 1940, the appellee, as lessor, and appellant, as lessee, entered into an agreement of lease with option to purchase. This lease ran for one year at a stipulated rental, and entitled appellant to purchase while the lease was in effect for a

stated amount, with interest. There was no provision for the application of rentals against the purchase price.

On December 16, 1941, the parties entered into another lease-option agreement similar to the one of December 16, 1940, except that it ran to June 15, 1942, and the rental and option price were somewhat higher.

During the term of the latter lease, and on March 26, 1942, the HOLC and the appellee entered into a written lease-option contract which acknowledged receipt of $3,768.33 from the appellee, and gave the right to purchase the real estate for a stated amount, less the cash payment and an amount equal to rentals paid thereunder.

On June 16, 1942, the appellee and appellant entered into another lease-option agreement similar to that dated December 16, 1940. On August 26, 1943, the HOLC deeded the property to appellee subject to a purchase money mortgage for $3523.99.

On September 25, 1943, and on December 26, 1943, appellant and appellee entered into further lease-option agreements similar to that of December 16, 1940, except that the rental and option prices were somewhat higher. The December 26, 1943, agreement was the last made by the parties, and expired March 26, 1944. Thereafter the appellant continued to pay appellee the stipulated rental of $60.00 per month until September 26, 1944, and received receipts which were marked "rentals."

On October 25, 1944, the appellee notified the appellant in writing to deliver up the possession of the real estate on or before November 27, 1944, at the expiration of the next month of her tenancy. The appellant did not make the payment due on October 26, 1944, and on November 24, 1944, the appellee notified the appellant in writing to deliver up the possession of the real estate for non-payment of rent.

This case was filed December 1, 1944. Judgment by default was entered against appellant on December 13, 1944. Appellant filed application to set the default aside, and on December 18, 1944, the court made the following entry:

"Comes now the defendant in the above entitled cause by her attorney, Francis A. Shaw, and withdraws her petition for relief from judgment by default.

"Comes now the parties by their respective attorneys and by the agreement of the parties it is ordered, adjudged and decreed by the Court that the judgment for possession and damages heretofore on the 13th day of December, 1944, entered herein on default be and it is hereby set aside and the defendant is hereby permitted to appear and defend in this proceedings.

"And defendant is ruled to answer said complaint in 20 days from this date.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that the defendant pay to White & Haymond, attorneys for the plaintiff, the sum of $120.00 on or before ten days from this date, the sum of $60.00 on the 26th day of each month hereafter until this litigation is terminated, and said sum shall, be applied by White & Haymond as follows:

"1. In satisfaction of installments due and to become due on a mortgage in the principal sum of $3,523.99 to the Home Owners' Loan Corporation on the real estate described in the complaint, executed by' the plaintiff and dated October 27th, 1943; and 2. In payment of taxes and insurance on said real estate and the balance as directed by the Court."

Pursuant to the terms of said order, the appellant paid $125 on December 20, 1944, $120 on January 26, 1945, and $60 on May 28, 1945. Up to the time of

trial seven additional payments of $60 each were due under the court order.

Upon the execution of the quit claim deed the appellee surrendered the two notes above referred to. The consideration for the deed was the cancellation of all of appellant's obligations to the appellee. The fair cash market value of the property, in December 1940, was $6500.

On March 27, 1943, after the giving of the deed, the appellee had sued appellant for possession of the real estate and for failure to pay $330 past due rentals. In that action the appellee was adjudged to be the owner of the real estate and she was awarded possession and damages for the unlawful detention thereof. The judgment was paid and no appeal taken.

The appellant at no time prior to the beginning of this action made any tender of the option price for said real estate. In the various options to purchase, the option price was sometimes fixed at an amount equal to appellee's investment, and in other instances the option price was fixed at round figures representing the amount the appellee was willing to accept for the property. For thirty years prior to the filing of this action the appellant had been engaged in the business of buying and selling real estate in Muncie, Indiana, as a real estate broker, and was familiar with lease, option and deed forms.

The court rendered conclusions of law as follows:

"(1)   That the law is with the plaintiff.

"(2)   That the plaintiff is the owner and is entitled to the immediate possession of the real estate described in her complaint and in these findings.

"(3)   The plaintiff is entitled to recover of the defendant the sum of $420.00."

Judgment was rendered awarding appellee possession of the premises, $420 damages for the unlawful detention thereof, and costs.

In her motion for new trial, the appellant questions the sufficiency of the evidence and the legality of the decision. We have, therefore, examined the evidence to determine (1) whether, among the special findings, there is one essential to the decision made by the court which is not supported by any evidence, or inferences reasonably to be drawn therefrom, and (2) whether the *undisputed* evidence establishes a controlling fact within the issues which is not found, but which if found would necessitate different conclusions of law and a different judgment based thereon. *Boyer* v. *Leas* (1946), 116 Ind. App. 502, 64 N. E. (2d) 38, 64 N. E. (2d) 591.

In our opinion the evidence amply supports each finding. The appellant insists that under the evidence the court should have found many facts not found, such as that advantage was taken of a fiduciary relationship between the appellant and appellee's attorney, so that she signed a deed intended only as better security for the debt and not as an absolute conveyance, despite its recitals; that the affidavit and deed were only to satisfy appellee, and were to be destroyed later; that the deed, assignment and affidavit were not intended to change the position of the parties, and the like. Obviously these circumstances, if found as facts, would have supported the conclusion that the deed was in reality intended as a mortgage. But the burden of proving that a deed, absolute on its face, was really intended to be a mortgage rests on the party alleging it to be a fact. *Bundy* v. *Bowman* (1920), 72 Ind. App. 367, 125 N. E. 781; *Grubb* v. *Brendel* (1913), 52 Ind. App. 531, 100 N. E. 872; 41 C. J., p. 345, § 115. The

record does not reveal undisputed evidence to establish facts not found. The evidence relating to those subjects was conflicting and contradictory. The court's failure to find these material facts must, therefore, be treated as a finding against the one having the burden of proving them. *I Duffey & Son Co.* v. *Buroker* (1937), 103 Ind. App. 397, 8 N. E. (2d) 111; *City of Michigan City* v. *State ex rel. Seidler* (1937), 211 Ind. 586, 5 N. E. (2d) 968. In deciding this case, therefore, we must consider the facts found as the facts in the case.

The appellant further insists that under the evidence, the court should have made a finding to the effect that the appellee, through her attorney, had discouraged a third party from furnishing money with which to take up the option. There was evidence tending to support such a finding in a proper case, but such a fact, if found, could not be considered as within the issues in this case, and if found would be disregarded. *Fleming* v. *Greener* (1909), 173 Ind. 260, 90 N. E. 72, 90 N. E. 73.

The appellant insists that the payments made under the court order cured the October 26, 1944, default in payment of rent, destroyed the basis for appellee's action, and the complaint filed December 1, 1944, alleging a default in payment of rent due in October could not be supported by evidence of a default in payment under the court order the following April.

There can be no doubt that the unconditional acceptance, *before suit,* of past due rent operates as a waiver of the lessor's right to claim a forfeiture based on such default. *Bacon* v. *The Western Furniture Company* (1876), 53 Ind. 229; 32 Am. Jur., Landlord & Tenant, § 883. Many courts take the view that the lessor's acceptance, after commencement of the action, of money accruing for rents is a waiver of his

right to enforce forfeiture, 32 Am. Jur., Landlord &
Tenant, § 884, but that seems not to be the real question
presented. In this case the property was mortgaged
to the HOLC. Mortgage payments, taxes and insurance
must be kept up to prevent loss of the property, and
the parties were in dispute as to the nature of their
interest in and the ownership thereof. Pursuant to the
agreement of the parties, the court ordered the appel-
lant, who occupied the real estate, to pay what appeared
to be the fair rental value during the pendency of the
action, the funds to be used to keep the property clear
and any overplus held subject to the order of the court.

It seems to us that this agreement, freely entered
into, was a fair arrangement advantageous to both
parties and one they had a right to make and
the court a right to approve and adopt. It oper-
ated somewhat like the appointment of a receiver
would have done, to preserve the property in litigation
without disadvantage or expense to either party. The
money was not actually paid to the appellee as rentals,
but it was taken into consideration when the judgment
was rendered. We do not believe it was intended or
can be considered as an acceptance by the appellee,
after suit filed, of the rental which was in default and
upon which the suit was based or as an acceptance of
rentals accruing after suit filed. Certainly the court did
not so understand it, for it is not likely that it would
have made an order opening a default judgment and
allowing appellant to defend and assert her interest and
by the same order direct her to make payments which
would terminate the litigation. In this view of the
situation, it will be unnecessary to consider the appel-
lee's contention that the tenancy was terminated by
her written demand for possession more than one month

prior to the date upon which possession was demanded, regardless of any default in the payment of rent.

The appellant contends that under the evidence there was no rent delinquency when the action was commenced, because of a certain $200 which it is claimed was diverted to his fee account, without authority from the appellant, by the attorney who made appellee's collections, and it is asserted that if this amount had been applied to rent, there would have been no default on October 26, 1944. The allocation of this money to the fee account seems to have taken place before the execution of the deed, when both the appellant and the appellee were furnishing funds with which to take care of HOLC payments, and whether the $200 was deducted from monies furnished by the appellant or the appellee became largely a matter of bookkeeping. The money so allocated might as well be considered as coming from the appellee as from the appellant, and the trial court apparently so considered it. There is ample evidence to the effect that the October 26, 1944, installment of rent was due from the appellant and was unpaid. By its finding No. 15 the court in effect so found, and we cannot say that such a finding was not supported by the evidence.

The prayer of the complaint is for possession and $60 damages, and no supplemental or amended complaint was filed. The judgment was for possession and damages in the sum of $420, which represents eleven months occupancy at $60 per month commencing with the rent due in October 1944, from which the $300 paid under court order was deducted. In a suit for possession, rents may be recovered up to the time of trial. § 3-1317, Burns' 1946 Replacement; *Dobbins* v. *Baker* (1881), 80 Ind. 52. The court would have allowed an amendment to the complaint,

if necessary, on appellee's motion. Not having been made below, in this court it will be treated as amended to conform with the proof. § 2-3231 Burns' 1946 Replacement, *White* v. *Stellwagon* (1876), 54 Ind. 186.

The appellant insists that the relationship between the parties was in its inception one of mortgagor and mortgagee. Contending for application of the maxim "once a mortgage, always a mortgage," she asserts that the deed and other instruments were not sufficient to change that relationship, and she thus reasons that the appellee's only remedy against appellant was by foreclosure. As we view the case we need not prolong this opinion by determining the original relationship of the parties. We shall assume that it was one of mortgagor and mortgagee.

There is nothing in our law to prevent a mortgagee from purchasing the mortgaged property and thus acquiring the absolute ownership of it. 41 C. J., p. 316, § 67. In fact, such transactions during and after the recent depression were common and frequently worked to the advantage of the mortgagor as well as the mortgagee. If, despite the giving of the deed, the original relationship of debtor and creditor actually continued between the parties, and the deed was in reality only a different form of security for the debt, the relationship of the parties as mortgagor and mortgagee would continue regardless of the deed and other papers and the recitals in any of them, for equity would penetrate the disguise and correctly label the transaction as a mortgage; and the appellant could insist upon a reconveyance upon payment of the debt. But if, as the court found, the debt was extinguished, the relationship of mortgagor and mortgagee went with it, for there can be no mortgage where there is no obligation to be secured by it. *Wolfe* v. *McMillan* (1889)

117 Ind. 587, 20 N. E. 509, *Beidelman* v. *Koch* (1908), 42 Ind. App. 423, 85 N. E. 977; 41 C. J. 333.

It is true that appellant continued to have the right to repurchase the property at a certain price, within a certain time, at her option, but the mortgage relationship did not necessarily continue because of that fact. As said by Justice Mitchell, speaking for the Supreme Court in *Voss* v. *Eller* (1887), 109 Ind. 260, at page 264, 10 N. E. 74, at p. 76:

> "It does not follow that a debtor may not convey property to his creditor in payment of an existing debt, nor that the two may not, by a contract made at the time of a conveyance so made, thereafter occupy the relation of vendor and purchaser toward each other, in respect to the land so conveyed. If the pre-existing liability of the debtor is extinguished, and the personal remedy of the creditor is released in consideration of a sale and conveyance of the property, the fact that a contract to resell, upon certain terms and conditions, is entered into, does not constitute the transaction a mortgage. Or, if, as a result of the agreement, the debt is extinguished, leaving the grantor the option to pay or not, as he pleases, and thereby entitle himself to a reconveyance, the transaction operates as a conditional sale."

The appellant questions conclusions of law Nos. 1 and 2. She contends that conclusion No. 1 is "a mere generalization insufficient to satisfy the rule of specific conclusions," that conclusion of law No. 2 is erroneous; and that other conclusions of law necessary to a decision of this case are wholly lacking unless they be found in conclusion No. 1. Conclusion No. 1 is unquestionably a generalization, but it may be held sufficient if it clearly appears that on the facts found the law is in favor of the party in whose favor they are announced. *Boyer* v. *Hadley* (1946), *ante*, p. 97, 66 N. E. (2d) 903.

It would unduly extend this opinion to summarize the ultimate and evidentiary facts found. Considering the ultimate facts found, together with the primary or evidentiary facts found which themselves necessitate the inference of ultimate facts, which latter will be treated as found, it clearly appears that on the facts found the law is in favor of the appellee, and conclusions of law Nos. 1 and 2 are each sufficient. *Harris* v. *Riggs* (1916), 63 Ind. App. 201, 112 N. E. 36; *Mortgage Underwriters, Inc.* v. *Stuckey* (1940), 108 Ind. App. 83, 27 N. E. (2d) 111; *Jackson* v. *First Nat. Bk. & Tr. Co. of LaPorte* (1945), 115 Ind. App. 313, 57 N. E. (2d) 946.

We find no reversible error, and the judgment is, therefore, affirmed.

NOTE.—Reported in 69 N. E. (2d) 760.