MANN ET AL. *v.* SCHNARR

[No. 28,729.   Filed November 16, 1950.]

656

658

*Milford M. Miller* and *William C. Welborn,* both of Evansville, for appellants.

*E. Menzies Lindsey,* of Evansville, for appellee.

EMMERT, C. J.—This is an appeal from a personal judgment against both appellants in the sum of $7,649.29, which included the principal sum of $6,586.58, interest in the sum of $316.41, and an attorney's fee in the sum of $746.30, for the payment of which real estate of appellants was ordered sold on foreclosure of a mechanic's lien. There was no special finding of facts, nor was there any motion to modify the judgment of the trial court, but since the cause must be retried, items which incidently affect the judgment will be considered. Difficult questions have been presented, and we feel constrained to note that we have not had proper assistance from the briefs in the determination of these matters.

The error assigned here is the overruling of a motion for new trial, which stated as causes therefor that (1) the decision of the court was not sustained by

sufficient evidence, (2) was contrary to law, and (3) the recovery was too large.

The complaint in substance alleged that on or about May 1, 1946, appellee and appellants entered into a verbal contract by the terms of which appellee was to furnish all materials and labor for the construction of a brick building on appellants' real estate, in consideration of which appellants promised to pay appellee for materials and labor plus 10% thereof; that certain payments were made from time to time, leaving a balance due in the sum of $6,586.58 on which interest was due; that appellee filed a notice of his intention to hold a mechanic's lien which should be foreclosed to pay said sum plus reasonable attorney's fees. The prayer was for a personal judgment against each appellant for principal, interest and attorney's fees and the foreclosure of the lien.

Appellants' first paragraph of answer substantially denied the allegations of the complaint. The second paragraph of answer in substance alleged that (1) appellant Mann and appellee had an express oral contract for the construction of a brick building for $8,000, and (2) an express oral contract for construction of a storage room within the brick building for the sum of $2,500, and (3) an express oral contract for the construction of a garage and driveway for the total sum of $1,150; and that appellants had overpaid appellee in the sum of $1,051.57 for which recovery was prayed. The reply to this second paragraph of answer denied the allegations, except payment in the sum of $10,020.96.

Appellants also filed a counter-claim setting up the same express oral contracts alleged in their second paragraph of answer, overpayment, and defective workmanship for which recovery was prayed in the sum of $2,500. Appellee's answer to the counter-

claim in substance admitted the amount paid to him, but denied all other allegations.

The finding of the court was against the appellants on their counter-claim and for the appellee on his complaint. The appellants were brother and sister, and will hereafter sometimes be referred to as such; the appellee was a contractor, who will hereafter at times be so designated. When we consider the evidence most favorable to the prevailing party in the trial court, a personal finding against the brother on the cost plus contract was sustained by sufficient evidence. However, we do not find any fact in evidence or any reasonable inference therefrom which would authorize a personal finding and judgment against the sister, although from the facts in the record and reasonable inferences therefrom the trial court could properly have found that her interest as tenant in common in the real estate was subject to a mechanic's lien.

All the items which might properly be embraced within the provisions of a cost plus contract do not necessarily constitute labor, materials or machinery under the provisions of § 43-701, Burns' 1940 Replacement, which grants the statutory right to a mechanic's lien. A lien cannot exist without the existence of a debt which, under the statute, it secures. The debt must arise out of contract, express or implied, but the right to the lien which the section of the statute grants is one *in rem,* and a lien may be declared and foreclosed without the recovery of a personal judgment. *Peck and Wife* v. *Hensley* (1863), 21 Ind. 344, 350. Thus, even though a personal judgment against the sister was not sustained by sufficient evidence, it does not follow that the lien did not attach to her interest in the real estate and be subject to foreclosure by a judgment *in rem.*

The contractor testified that he had a conversation with the brother in which "I agreed to do the job on the basis of cost, plus 10%. As a stipulated sum, I would not do it. That was agreeable to Mr. Mann." A couple of weeks later the brother asked the contractor when he would get started and there was further conversation about the basis on which the building was to be constructed and it was stated it was to be "cost, plus 10%." Although the complaint stated the agreement was for labor and material plus 10%, the proof did not constitute a fatal variance and on appeal we will regard the complaint amended to conform with the evidence in this respect. Section 2-3231, Burns' 1946 Replacement. *Curtis Storage & Trans. Co.* v. *Rosenberg* (1939), 106 Ind. App. 622, 21 N. E. 2d 440; *Esch* v. *Leithesier* (1946), 117 Ind. App. 338, 69 N. E. 2d 760. Nor was the recovery on quantum merit instead of an express contract.

Appellants assert that various items which were included in the finding were not costs within the contract, nor materials or labor under the lien statute. The trial court's finding was based upon a cost plus contract, and the contractor was entitled to recover under this contract for every item which the evidence showed to be an essential cost of construction, but the lien could only secure such items as were labor or material under the lien statute.

The contract was general and did not define costs. We do not have the benefit of many cases or authorities on cost plus contracts. See Graske, *War Contract Claims*, ch. 4, § 44 et seq.; 9 *Williston on Contracts* (Rev. Ed.), ch. 4, § 44 et seq.; 2 A. L. R. 126; 27 A. L. R. 48. In the well considered case of *Lytle, Campbell & Co.* v. *Somers, Fitler & Todd Co.* (1923), 276 Pa. 409, 120 Atl. 409, 27 A. L. R. 41, the court construed a construction contract, where the plaintiff

was a general contractor principally engaged in repairing, remodeling and altering buildings, with its main office in Pittsburgh, from which it supervised other construction contracts being performed at the same time. The contract under consideration provided for compensation "on a time and material basis, with ten per cent (10%) profit as compensation to the contractor, the records of the cost to be kept at all times in such a manner as to be checked and audited by the owners." The court clearly distinguished between overhead charges and operating costs. The court held that operating charges were items inseparably connected with the productive end and contained "all elements of labor and materials" and were "capable of being ascertained by those dealing with" the contractor. On the other hand, overhead, or general expense, which included salaries of executive or administrative officials, interest charges for floating bonds, carrying charges, depreciation, taxes and general office expense could not be allowed as an operating charge in a cost plus contract, in the absence of language bringing it within the term costs. In *Lovell* v. *United States* (1912), 47 Ct. of Cl. 361, the court held that the words "actual necessary cost" for extra work under paragraph 24 of the written contract, included liability insurance of laborers, depreciation of the plant, fixed charges and depreciation of warehouses, under the construction given the contract by the parties before the work was undertaken, although items for loss of board of men which were incurred to prevent a pay increase was not allowable as a cost item. In *James Stewart & Co.* v. *United States* (1924), 59 Ct. of Cl. 295, the court held that the employment of expediters, war taxes on freight bills, telegrams, express charges and passenger fares incurred in the purchase of material and performance of the contract were allowable as

costs after being agreed to and approved by the officer in charge of the work.

Different considerations are involved in determining whether items properly costs are within the definition of labor or materials of the lien statute. If ▉ articles are essentially personal in character, and in the absence of an intention that they are to be attached as permanent fixtures to the real estate, they are not materials under the lien statute. *Menzenberger* v. *American State Bank, Inc.* (1935), 101 Ind. App. 600, 198 N. E. 819. However, the work and labor of superintending a construction job enters into the lien. *Ferguson* v. *Despo* (1893), 8 Ind. App. 523, 34 N. E. 575. In *Beeson* v. *Overpeck* (1942), 112 Ind. App. 195, 44 N. E. 2d 195, the court reasoned that since " 'one who labors with body or mind or both' " is a " 'laborer,' " an architect who drew plans and specifications and did supervision of the construction, was a laborer under the lien statute. See 40 C. J. 81. In *Wells* v. *Christian* (1906), 165 Ind. 662, 76 N. E. 518, the court said, concerning a contract to lay a seven inch steam pipe from a boiler room into a public street, and to restore the street to its original condition, that "hauling of materials to be used in the performance of the work, and hauling away the surplus earth excavated, were incidental matters inseparably connected with the principal undertaking, and constituted items of labor for which a lien may be acquired." The Court of Appeals of Kentucky in *Bond* v. *W. T. Congleton Co.* (1939), 278 Ky. 829, 129 S. W. 2d 570, considered a case very similar to the facts involved in this appeal. The contractor had an agreement with the owner for the construction of a building on his land under an agreement "to pay therefor the actual cost of labor and materials and, in addition thereto, 10 per cent of the total aggregate thereof." The court,

in holding the 10 per cent to be secured by the lien, said:

> "The contractor himself necessarily performs labor in the purchasing of and paying for material and in furnishing and paying for the necessary labor in the construction of a building and it appears reasonable to us that labor thus performed by the contractor is lienable to the same extent as any other labor that goes into the building where the contract provides for the payment of a definite percentage as compensation for this labor to be performed by the contractor.
>
> "We reach the conclusion that appellee's claim for 10 per cent on the cost of materials and labor is a lienable claim under the statute." (Page 834.)

The brother's interest in the real estate was subject to the mechanic's lien for the cost of labor and materials, plus 10 per cent thereof.

There were a number of items allowed by the trial court for transportation costs in hauling materials and dirt. These could be incidental matters and so inseparably connected with the principal undertaking that they would be included in the cost, as well as being labor for which a lien could be acquired. *Wells* v. *Christian* (1906), 165 Ind. 662, 76 N. E. 2d 518, *supra*.

There were six separate items for ice, one being in the sum of $16.20, which were allowed by the trial court. Without further evidence we are unable to determine as to whether some or all of this was properly allowed either as cost or an item of labor or material. If the ice was used to cool the drinking water for the men on the job, it should be allowed as an item of cost, since we take judicial notice that it is customary to furnish drinking water to laborers on construction jobs. However, we do not believe it would be labor under the lien statute. If the

ice was used to test the cold storage room it would not be a material under the lien statute.

The trial court included in the finding and judgment $215.12 for Workmen's Compensation insurance, $215.12 for Employment Compensation payments, $71.70 for Social Security tax and $71.70 for Gross Income tax to the state. One of the purposes of the Workmen's Compensation Act is "to transfer from the worker to the industry in which he is employed and ultimately to the consuming public a greater portion of economic loss due to industrial accidents and injuries." 58 Am. Jur. 576, § 2. See *In re Duncan* (1920), 73 Ind. App. 270, 274, 127 N. E. 289. Its amount depended upon the payroll. This is a direct operating cost and not overhead on this job. Likewise the Employment Compensation payments and the Social Security tax were properly direct operating costs depending upon the payroll. The Gross Income tax paid to the state is a direct tax upon the contractor and not an operating cost, but rather an overhead charge. None of these items is either labor or material under the lien statute.

The items for lights and water would depend upon the evidence. If current was required to furnish light for the workmen it would properly be a direct operating cost, though not a material. If the water was used for drinking purposes it would be an operating cost, but not labor. If the water was used for mixing cement or mortar it would properly be a part of the material cost.

The items for long distance phone calls and telegrams could be direct costs of the particular job if the evidence so disclosed, but in no event could they be secured by the mechanic's lien.

The item for rent of a concrete mixer was obviously for a labor-saving machine. In *Potter Mfg. Co.* v. *A. B.*

*Meyer & Co.* (1909), 171 Ind. 513, 86 N. E. 837, there was a claim made for the rental price of a "Potter trench machine" by the lessor. The court, at page 517, said, "There could be no question that the contractor, J. J. Smith & Company [the lessee of the machine], might have acquired a lien to the extent of the work done, including that done by this labor-saving machine." Therefore the rent of this machine, if reasonable, would be a direct operating cost, and the value of the work done by it would be secured by the lien as a labor charge. However, the rent of 200 pounds of burlap, if used for curing cement, would be a direct operating cost but neither labor nor material within the lien statute. The purchase price of a broom would fall within the classification of small tools which the contractor should furnish as a part of his services, and not cost or material.

As to whether or not the dozen light bulbs were a direct cost would depend upon the evidence. They were personal property and not properly the subject of a mechanic's lien. *Waring* v. *Burke Steel Co., Inc.* (1947), 69 N. Y. S. 399. The charges for one padlock and some twine might or might not be direct costs, depending on the evidence. If the padlock were chained permanently to the building so that by intention it became a part of the realty it could be a material. Conceivably twine could be a material going into the building, but if it did not become a permanent part of the building it should be excluded from the lien.

The sister contends that her brother, who was co-tenant in common with her of the real estate, had no authority to contract for her and that her interest in the real estate is not subject to the lien under the evidence. It is true that there is no implied agency on the part of one co-tenant in

common to bind the interest or encumber the interest of the other co-tenant. *Wiedenhammer* v. *McAdams* (1912), 52 Ind. App. 98, 98 N. E. 883; *Metzger* v. *Huntington T. T.* (1894), 139 Ind. 501, 37 N. E. 1084, 39 N. E. 235; *Foltz* v. *Wertz* (1885), 103 Ind. 404, 2 N. E. 950. But we think the same principles of law are applicable to this case that have been decided in the case of a husband binding his wife's interest in real estate. The case of *Capp* v. *Stewart* (1872), 38 Ind. 479, wherein the court laid down the rule that in order for the wife's interest in real estate to be subject to a lien she must have done such acts as would "bind her personally if she were free from coverture," must be held overruled by subsequent cases. It is the law that something more than mere inactive consent is necessary to bind the owner's interest. *Snelling, et al.* v. *Wortman, Rec.* (1940), 107 Ind. App. 422, 24 N. E. 2d 791. The husband may be the agent for the wife in making an authorized contract, or she may by her acts ratify an unauthorized contract. Or if the wife knows the improvement is being made on the real estate and makes no objection to those furnishing the labor and materials, and does any affirmative act consistent with her consent to the improvement, she consents to the creation of the lien and her interest in the real estate is subject to the lien even though she may not be personally liable on the contract. *Dalton* v. *Tindolph* (1882), 87 Ind. 490; *Wilson* v. *Logue* (1892), 131 Ind. 191, 30 N. E. 1079; *Taggart* v. *Kem* (1899), 22 Ind. App. 271, 53 N. E. 651. The evidence in this case discloses the contract was made by the brother. However, the contractor saw the sister several times in their office, gave her statements of the labor and materials furnished. At one time she objected to the high cost of the job. She signed several checks in part payment of the contract. These acts are sufficient

to bind her interest even though we find that under the evidence she is not personally liable on the contract. It would be inequitable to permit her to stand by and make no objection to the construction of the building when she had ample opportunity to do so, and act affirmatively consistent with her consent to the improvement without having her interest in the real estate subject to the lien. Since there was no privity of contract between the contractor and the sister, her interest in the real estate was only subject to a mechanic's lien for the reasonable value of labor and materials, plus the reasonable value of the contractor's services which were labor, not to exceed the contract price of 10 per cent for his services.

She also insists that her interest is not properly subject to the lien, since she was named in the statutory notice as Nellie E. Bass. Rhetorical paragraph two of the complaint charged that the defendant Nettie E. Bass was one and the same person as Nellie E. Bass. The first paragraph of answer did not deny that Nellie E. Bass and Nettie E. Bass were one and the same person. It was stipulated that appellants Clarence J. Mann and Nettie E. Bass were the owners of the real estate at all times involved in the lawsuit and the contractor testified that they were brother and sister and operated the Blue Ribbon Dairy. Notice of the intention to hold a lien was sufficient to identify the land. The owners knew the property intended to be described. *Smith* v. *Newbaur* (1896), 144 Ind. 95, 42 N. E. 40, 1094, 33 L. R. A. 685. The notice recited the contractor intended to hold a lien "on Lots 14 and part 13 & 15, Block 1, in Claremont Place, an addition to the City of Evansville, Indiana." The stipulation at the trial stated that appellants owned real estate in "Vanderburgh County, State of Indiana, to-wit: The west 16.32 feet of lot 13, all

of lot 14, and the adjoining 23.36 feet of lot 15, all in block 1 in Claremont Place, an addition to the city of Evansville." From the evidence the court had the right to find this was the real estate subject to the lien and it was not necessary to reform the notice.

The trial court allowed interest on the principal amount remaining due. The contractor had rendered a final itemized statement to the appellants on March 31, 1947, and payment was demanded several times. Section 19-2003, Burns' 1950 Replacement, allows interest after the rendition of such an itemized statement. There was unreasonable delay in the payment. *Eastman* v. *Smith* (1914), 56 Ind. App. 621, 105 N. E. 64. The interest, being an incident of the principal sum found remaining due and being withheld by unreasonable delay is secured by the lien. *Merritt* v. *Pearson* (1881), 76 Ind. 44.

The motion for a new trial challenged the finding against the defendants that they were personally liable for attorney's fees. It was stipulated by the parties "that the reasonable value of attorney's services in this community and in this Court is at the rate fixed in the schedule of fees by the Evansville Bar Association, and that schedule of fees may be applied by the court in the assessment of any fee for the plaintiff's attorney in this action." This was a binding agreement by appellants that the trial court could fix the attorney's fees according to the bar association rate. *Eastman* v. *Smith* (1914), 56 Ind. App. 621, 105 N. E. 64, *supra.* However, the trial court erred in finding that appellants were personally liable for the attorney's fees. Section 43-707, Burns' 1940 Replacement, provides for recovery of a reasonable attorney's fees "as a part of the judgment in said suit." *Hammond Hotel, etc. Co.* v. *Williams* (1931), 95 Ind. App. 506, 176 N. E. 154, 178 N. E. 177; *Grant*

672

*County Lumber Co.* v. *Marley* (1934), 100 Ind. App. 42, 192 N. E. 110. The judgment for attorney's fees is not personal, but *in rem* to be paid out of the proceeds of the sale of the real estate. *Hubbard* v. *Burnet-Lewis Lumber Co.* (1912), 51 Ind. App. 97, 98 N. E. 1011.

Judgment reversed and new trial ordered, with leave to appellee to amend his complaint.

NOTE.—Reported in 95 N. E. 2d 138.