IDEAL HEATING COMPANY, INC. AND THE AETNA CASUALTY & SURETY
COMPANY V. FALLS & NOONAN, INC. AND THE ROSS TOWNSHIP
SCHOOL CORPORATION, ROSS COMMUNITY SCHOOL BUILDING
CORPORATION AND SHANNON PLUMBING, INC.

[No. 3-875A184. Filed August 9, 1978.]

*Delmar P. Kuchaes,* of East Chicago, for appellants.

*Patrick J. Galvin, Galvin, Galvin & Leeney,* of Hammond, for appellee
Falls & Noonan, Inc.

HOFFMAN, J.—Falls & Noonan, Inc., a subcontractor in the remodeling of the Merrillville Junior High School, intervened, by stipulation, in an action by Clow Corporation against Ross Township School Corporation, Ross Community School Building Corporation, Ideal Heating Company, Inc., Shannon Plumbing, Inc. and the Aetna Casualty and Surety Company. On motion of Falls & Noonan, Inc., (hereinafter "Falls") its claim was then served from the main action. After a trial to the Court, judgment was entered for Falls awarding it $5,500 damages, interest in the amount of $844 and attorneys fees in the amount of $1,100. Ideal Heating Company, Inc. and Aetna Casualty and Surety Company (hereinafter "appellants") appeal from that judgment.

The facts are not in dispute. The School Building Corporation entered into a contract with Ideal which provided that Ideal was to do all the heating and plumbing work on the project. Ideal then subcontracted the plumbing and sewer work to Shannon Plumbing. Shannon, in turn, subcontracted the pipe covering work on the project to Falls. Falls' estimate for the job, $11,645, was accepted by Shannon in November 1971, and Falls began work in April 1972. Later on during the construction Shannon failed to pay installments due for work done, and Falls ultimately left the project without completing work under the contract. At the time it left the job in January 1973, Falls had completed 95% of the agreed work and had furnished extras worth $550. It had, however, received payments in the amount of only $5,500, though it had submitted bills to Shannon in the amount of $10,500 (95% of the contract price). In addition, Falls had received no payment for the extras furnished. Finally, in March 1973, Falls filed a notice with the School Building Corporation stating that it had not been paid in full for its work on the project and requesting that final payment to Ideal be withheld until full payment was made pursuant to the terms of IC 1971, 5-16-5-1 (Burns Code Ed.). Having received no further payment, Falls filed its intervening complaint in December 1975, in which it sought the balance of the contract price for the work completed ($5,000), payment for extras ($550), interest and attorneys fees.

IC 1971, 5-16-5-1, *supra*, under which Falls filed its claim reads, in pertinent part, as follows:

"Withholding payment for benefit of subcontractors, materialmen

and labor—Filing and payment of claims—Surety, when released—Definitions.—Except as hereinafter otherwise provided, when any public building or other public work or public improvement of any character whatsoever is being constructed, erected, altered or repaired under contract at the expense of the state or at the expense of any county, city, town, township, school corporation, assessment district, or any other political subdivision or commission created by law, it shall be the duty of any such board, commission, trustee, officer or agent acting on behalf of the state, county, city, town, township, school corporation, assessment district, or other political subdivision or commission created by law, to withhold final payment to the contractor until such contractor has paid to the subcontractor or subcontractors, materialmen for material furnished, labor employed in such construction or those furnishing any service in relation to or in connection with such construction, erection, alteration or repair, all bills due and owing the same; Provided, That there is a sufficient sum owing to the contractor to pay all such bills, and if there is not a sufficient sum owing to such contractor on such contract to pay all such bills, then the sum owing on such contract shall be prorated in payment of all such bills among the parties entitled thereto; Provided, That such subcontractor or subcontractors, materialmen, laborers or those furnishing service as herein provided shall file with any such board, commission, trustee, officers, or agent acting on behalf of such state, county, city, town, township, school corporation, assessment district, or other political subdivision or commission created by law, their claim within sixty [60] days after the passage of this act [5-16-5-1—5-16-5-3] or within sixty [60] days from the last labor performed, last material furnished, or last service rendered by them. . . ."

It is appellants' contention that under this section Falls was erroneously awarded the full contract price for the work it did because the evidence showed that the amount claimed included various items of general overhead and profit. Appellants argue that this statute protects subcontractors, such as Falls, only to the extent of labor and materials. Thus, they reason, the award of an amount which exceeded the value of those items was improper.

While conceding that no decision has yet construed Section 5-16-5-1 in such a manner, appellants would have this Court, by analogy, treat that section as though it provided subcontractors, and others similarly situated, with a remedy which is as limited in scope as that provided

by the mechanics' lien statute, IC 1971, 32-8-3-1 (Burns Code Ed.), i.e., a lien "to the extent of the value of any labor done, material furnished, or either."

> *See:* *Montgomery v. Southern Surety Co. of Iowa* (1928), 96 Ind.App. 472, 162 N.E. 31;

> *See:* *Mann et al. v. Schnarr* (1950), 228 Ind. 654, 95 N.E.2d 138.

The express language of Section 5-16-5-1 prohibits such a limiting construction. It provides that the public body for whom the construction is done shall withhold final payment to the principal contractor "until such contractor has paid to the subcontractor or subcontractors . . . *all bills due and owing the same*" (our emphasis). The clear intent of this provision is that the subcontractor shall receive the contract price due for his work, not merely an amount to cover its costs. The remainder of Chapter 5-16-5 supports this construction. Section 5-16-5-2 requires that the principal contractor on such a public project execute a bond "conditioned for the payment by the contractor . . . *of all indebtedness, which may accrue to* any person, firm, or corporation on account of any labor or service performed or materials furnished or service rendered" (our emphasis). Further, Section 5-16-5-3 provides that Chapter 5-16-5 is supplemental to all other laws (e.g. the mechanics' lien statute) for the protection of labor, subcontractors or materialmen. Thus, the award of the contract price for the work done was proper since the clearly-stated remedial purpose of the statute is served thereby.

Appellants also argue that because there was no evidence of unreasonable delay in payment, the court erred when it awarded interest at the rate of 8% per annum on the amount due to Falls. But, whether there has been an unreasonable delay in payment so as to justify an award of interest is a question of fact.

*Independent, etc., Stores v. Earles* (1914), 57 Ind.App. 241, 106 N.E. 730;

*Remington v. Edwards* (1923), 79 Ind.App. 501, 138 N.E. 824.

On such questions this Court cannot weigh the evidence on appeal; rather, it must consider only the evidence most favorable to the appellee. *Chaney v. Tingley* (1977), 174 Ind.App. 191, 366 N.E.2d 707. Here, there was evidence that Falls made its formal claim for payment on March

7, 1973, and that Ideal had knowledge of that claim. Yet, at the time Falls brought its claim to court (in December 1975), it still had received no payment whatever. We cannot say that this evidence leads to but one conclusion, one contrary to that reached below. Consequently, we must uphold the finding of the court below that payment was unreasonably delayed.

*Chaney v. Tingley, supra;*

*Utica Mut. Ins. Co. v. Ueding* (1977), 175 Ind.App. 60, 370 N.E.2d 373.

A third issue raised by appellants is whether the award of attorneys fees was proper in this case. However, in its brief to this Court, the appellee has conceded that the award is not sustainable. We therefore remand this cause to the trial court with instructions to enter judgment vacating the award of attorneys fees.

The judgment below is in all other respects affirmed.

Garrard, P.J. concurs.

Robertson, J., participating by designation, concurs.

NOTE—Reported at 378 N.E.2d 946.