GARDNER ET AL. *v.* SULLIVAN MANUFACTURING COMPANY.

[No. 10,917. Filed December 6, 1921.]

1. APPEAL.—*Review.*—*Harmless Error.*—*Ruling on Demurrer.*— *Special Findings.*—Overruling a demurrer to the complaint is immaterial where the court finds the facts specially, and states its conclusions of law thereon, as the same question as to the legal effect of the facts stated in the complaint arises upon the facts as specially found. p. 62.

2. MINES AND MINERALS.—*Lease of Coal Lands.*—*Requirement for Improvements Within Stipulated Time.*—*Equipment Furnished Thereafter.*—*Right to Lien.*—Where a lease of a coal mining property required lessee to expend a stipulated amount for machinery, improvements and betterment within a specified time, and to deposit a portion of such amount with the lessor to be paid and applied on such improvements and betterments, one furnishing equipment and repairs to lessee after the expiration of the period specified in the lease were not entitled to a lien by reason of the stipulations in the lease as to improvements. p. 68.

3. MECHANICS' LIEN.—*Statutory Right.*—The lien of a materialman did not exist at common law, and the right to such a lien must be conferred by statute. p. 68.

4. MECHANICS' LIENS.—*Statutes.*—*Construction.*—Statutes giving to materialmen, laborers, etc., liens upon property to the extent of the value of labor performed or materials furnished are in derogation of the common law and strictly construed as to whom the benefits thereof are to be extended, and one claiming such benefits must be clearly within the terms of the statute. p. 68.

5. MINES AND MINERALS.—*Coal Miners.*—*Equipment Furnished Lessee.*—*Right to Lien.*—Where equipment for a coal mine was furnished by claimant, and repairs were made by it at the instance of the lessee, and not at the request of the owners of the land, their mere inactive consent to the making of such improvements by the lessee gave claimant no right to a lien. p. 68.

6. MECHANICS' LIENS.—*Right to Lien.*—*Interest of Person in Possession.*— *Duty of Materialmen to Take Notice.*— Persons about to furnish labor or materials for the making of an improvement on land must take notice of the rights of persons in possession and of the extent of their interest in the land. p. 69.

From Sullivan Circuit Court; *William H. Bridwell,* Judge.

Action by the Sullivan Manufacturing Company against Frank G. Gardner and others. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Adamson & Gallagher,* for appellants.
*Lindley & Bedwell,* for appellee.

ENLOE, J.—This was an action brought by the appellee seeking to have a lien declared in its favor against certain real estate owned by appellants, on account of certain labor done and materials furnished.

The issues being settled, the cause was tried by the court, which, a request having been duly made therefor, made a special finding of facts and stated its conclusions of law thereon favorable to the appellee. Thereafter a decree was entered ordering the property sold to pay and satisfy said liens. Exceptions were duly taken to each conclusion of law, followed by a motion

for a new trial, which being overruled, this appeal is prosecuted.

It is first urged that the court erred in overruling appellant's demurrer to the complaint. As the court found the facts specially, and stated its conclu-

1. sions of law thereon, the ruling on said demurrer becomes immaterial. *Eisman* v. *Whalen* (1906), 39 Ind. App. 350, 79 N. E. 514, 1072. The same question as to the legal effect of the facts stated in the pleading arises upon the facts as specially found.

Various questions are presented by counsel for the appellant, but they may all be reduced to two, viz.: (a) Under the facts found is the appellee entitled to assert and enforce any lien as against the appellants, they being the owners of the fee of the lands sought to be affected; and (b) could the goods sold, and labor performed, and for which the lien is sought to be enforced, under the facts of this case, be the basis for a lien?

The special findings are quite lengthy and we do not deem it necessary to set them out at length. The essential facts so found are in substance as follows:

On March 14, 1917, one Platt and his wife were the owners in fee, of certain described coal lands in Sullivan county, Indiana, and on said date conveyed the same by deed to one Frank G. Gardner, one of the appellants herein, which said deed was duly recorded in the office of the recorder of said county, prior to April 10, 1917.

On April 10, 1917, said Gardner made, executed and delivered to one William S. Freeman, a lease with option to purchase said real estate—said lease being a coal lease covering said land. On May 31, 1917, said Freeman, with the consent of said lessor, assigned said lease to the Willfred Coal Company, such asignment being duly endorsed on said lease.

In the said lease it was agreed that the lessee should

pay as rental for said premises, a royalty of five cents on each ton of coal mined and removed from any and all of said land.  There was also a further agreement in said lease to pay, as a part of the consideration therefor, certain specified sums in cash, and also for the payment of taxes on said property then due or to become due during the continuance of the lease which was, by its terms, to continue for a term of five years, unless sooner terminated according to terms and conditions therein provided.  Said lease also provided that the lessee should keep the buildings and improvements on the premises insured for their reasonable insurable value, and that the loss, if any, under such policies should be made payable to the Central Trust Company of Illinois, as trustee.  The minimum amount of insurance to be carried on said property being fixed at the sum of $15,150.

It was further stipulated in said lease that within thirty days from the date thereof, the lessor should begin putting the properties in shape to actively mine coal, and that within six months from the date of said lease the lessee should expend for machinery, improvements, and betterments on said properties not less than $15,000; $5,000 of which sum was at the time of the execution of said lease, deposited by said lessee with the lessor, to be paid and applied upon such improvements and betterments, and to be paid out upon the order of said lessee for such improvements and betterments only after satisfactory evidence had been furnished that said lessee had expended the sum of $10,000 on account of such improvements and betterments.

Said lease further recited:   "It is understood between the parties hereto that the title to said premises is held by said lessor subject to the lien of a certain trust deed dated July 2, 1902, given by the Willfred Coal Company, of Sullivan County, Indiana, to Royal Trust Company

and Harry E. Ambler, as trustee, as security for the payment of its two hundred (200) bonds of the par value of Five Hundred ($500) Dollars each, of which bonds there are now outstanding one hundred and thirty-four (134) of the par value aggregating Sixty-seven Thousand ($67,000) Dollars, and that said Central Trust Company of Illinois is the acting trustee under said trust deed as successor to said Royal Trust Company, and that said lessor holds said title as trustee for a protective committee composed of Charles R. Webster, Alfred E. Holt and Albert G. Welch, pursuant to an agreement between said committee and such holders of said outstanding bonds as have deposited their said bonds with the Chicago Title & Trust Company (an Illinois Corporation) under and pursuant to an agreement dated the 24th day of March, 1917, and that this lease and the covenants and agreements therein contained on the part of said lessor are made at the instance and request of said protective committee and that the said lessor herein named assumes no personal obligation or liability thereon, but that the same are made and entered into on his part solely as such trustee at the instance and request of said committee."

The court further found: That immediately after the assignment of said lease said Willfred Coal Company took possession of all the real estate described in said lease and began the development of the same as coal property; that said Willfred Coal Company immediately began the construction, upon said real estate, of a new coal mine that was known and designated as "Willfred Mine Number Five"; that said Willfred Coal Company completed the construction of said "Willfred Mine Number Five" prior to November 1, 1918.

The court further found: That said coal mine was constructed as coal mines usually are, and consisted of

a shaft sunk from the surface of the earth to the veins of coal, and entries driven therein; of tipples, fans for ventilation, engines, boilers, tracks, and various kinds of machinery essential and necessary to the mining of coal; that it was constructed and located upon the real estate described in said lease; that within said coal mine coal was transported in mining cars that were constructed with wooden bodies placed upon four wheels and that moved over steel rails laid throughout said mine; that said cars were hauled along and over rails by mules or motor power and were a necessary and essential part of said coal mine.

The court further found that: "The Sullivan Manufacturing Company is a corporation duly organized under the laws of the State of Indiana, and that a part of its business is that of manufacturing mine cars and mining machinery of different kinds, and repairing the same; that prior to the 19th day of September, 1918, it had made an agreement with the Willfred Coal Company by and through its president by which it agreed to manufacture and deliver to said coal company to be used in said coal mine Number Five certain coal cars for the sum and price of Ninety-six ($96) Dollars each, and to make repairs upon certain machinery that was a part of the equipment of said coal mine; and in September and October, 1918, it manufactured and delivered to said coal company twenty-two (22) mine cars then and there of the value of Two Thousand Two Hundred Twelve ($2,212) Dollars; that all of said mine cars were manufactured, sold and delivered to said Willfred Coal Company to be used in said coal mine Number Five and were so used therein by said Willfred Coal Company as a part of the equipment of said coal mine; that the same were necessary and essential in the mining and removing of coal from said mine; also that on the

30th day of November, 1918, said manufacturing company, at the instance and request of said coal company performed certain labor and made certain repairs upon a fan that was located at said coal mine 'Number Seven' and was a part of the equipment thereof used in the ventilation of said mine, and that the repairs so made were of the value of $143.00; On the 20th day of December, 1918, said manufacturing company filed in the office of the recorder of Sullivan County, written notice of its intention to hold a lien upon the property involved in this suit, and then being operated by Willfred Coal Company, for labor performed and materials, machinery and equipment furnished and used in the operation of said mine; that said notice, so filed was duly recorded in the records in the recorder's office in said county; that said coal mine Number Five is located two or three hundred feet from coal mine Number Seven, and both are located on the same real estate."

Many other facts are included in said special findings, but as we view it, are not of controlling influence, and therefore not herein set out.

The trial court stated as its conclusions of law upon the facts found, the following: "No. 1. The plaintiff is entitled to recover from the Willfred Coal Company the sum of $2,398.00. No. 2. The right of plaintiff to recover on the note executed by the Willfred Coal Company and William S. Freeman as surety for a portion of the amount sued on in this action is barred by plaintiff's failure to file the same as a claim in the receivership proceedings against the Willfred Coal Company, described in these findings. No. 3. The plaintiff is entitled to foreclose its Mechanic's Lien on the property described in its complaint against all defendants in the sum of $2,255.00, for coal cars furnished as a part of the equipment of said mine, and for labor and material on the fan repaired for use in said mine; and the fur-

ther sum of $500, as attorney fee for plaintiff's attorneys, in all $2,755, and to have the property described in its complaint sold to make assets for the payment of said sum of $2,755, and costs of this action." To each of which conclusions of law the defendants at the time separately and severally excepted. Thereafter appellants filed their separate motion for a new trial, which was overruled, and to which action of the court they duly excepted. Thereafter appellants filed other motions not necessary to be considered in this opinion. Thereupon the court rendered judgment in favor of appellee and against the appellants and ordered the said real estate sold to pay and satisfy said judgment. Appellants then prayed an appeal to this court which was granted and which has been duly perfected.

From the foregoing facts as found by the court, it clearly appears that the legal title to the lands, against which the appellee seeks to enforce their lien, was, at the time said cars were sold and said labor done, in appellant Frank G. Gardner, but that he was holding the same, in fact, as trustee; but that the Willfred Coal Company was in possession of said lands, as tenant, under a lease authorizing it to mine coal.

The appellee insists that as the said coal company, under said lease, was required to do certain things in the way of putting said property in condition to mine coal, and as $5,000 was placed in the hands of appellants, to be paid out on account of such improvements so to be made, that this was sufficient to constitute the said coal company the agent of appellants for the purpose of purchasing said equipment and making said repairs, and that therefore they are entitled to have their said lien.

In this connection it will be noted that said lease was executed April 10, 1917, and assigned to said coal company May 31, 1917. Also that the time within which

said improvements were to be made, by the said lessee, was fixed in said lease at, "within six months from the date hereof," which time would expire October 10, 1917, and that the transactions for which the lien is now sought did not occur until the months of *September, October and November, 1918,* and long after the time fixed in said lease for the making of said improvements had expired. Appellee was not, therefore, in a situation to claim any benefit or advantage from said provision.

If the appellee has any right to a lien against the lands in question, and to enforce such lien, that right must be conferred by some statute. It did not exist at common law. Statutes giving to materialmen, laborers, etc., liens upon property to the extent of the value of labor done or materials furnished are in derogation of the common law and strictly construed as to the persons to whom the benefits thereof are to be extended. No one is allowed to claim these benefits unless clearly within the terms of such statutes. *Cincinnati, etc., Railroad* v. *Shera* (1905), 36 Ind. App. 315, 73 N. E. 293; *Krotz* v. *A. R. Beck Lumber Co.* (1905), 34 Ind. App. 577, 73 N. E. 273; *Potter Mfg. Co.* v. *A. B. Meyer & Co.* (1909), 171 Ind. 513, 86 N. E. 837, 131 Am. St. 267; *Toner* v. *Whybrew* (1912), 50 Ind. App. 387, 98 N. E. 450.

In the case of *Wilkerson* v. *Rust* (1877), 57 Ind. 172, it was averred in the complaint that Wilkerson "was, at the time of said work, and is now, the owner of said real estate, and that he was aware of, and consented to, said improvements then and there being made," but the court held that this was not sufficient to entitle the plaintiffs to a lien upon said premises. In the case now at bar there is no claim that the said equipment was furnished and repairs made, at the request of the owners of said lands; and where the

claimed benefits were not placed upon lands, at the request of the owner, it has been many times held that *something more than mere inactive consent* was necessary, in order to charge the lands with a lien therefor. See, *Toner* v. *Whybrew, supra,* where the improvements were made by a purchaser, in possession, before delivery of deed; also, *People's Saving, etc., Assn.* v. *Spears* (1888), 115 Ind. 297, 17 N. E. 570, wherein it was said:

"The fact that Spears was in possession under a contract of purchase, gave him no authority to overreach the plaintiff's title by contracting for repairs." If the vendee in possession of premises, under a contract to purchase, and holding a title bond, cannot thus cloud the title of the true owner, certainly there is much greater reason for holding that a tenant in possession of premises under a lease cannot so cloud the owner's title. They can, as tenants, create liens to the extent of their interest in said property only. *McCarty* v. *Burnett* (1882), 84 Ind. 23; *McAnally* v. *Glidden* (1902), 30 Ind. App. 22, 65 N. E. 291; *Montpelier Light, etc., Co.* v. *Stephenson* (1899), 22 Ind. App. 175, 53 N. E. 444.

The law requires that persons about to furnish labor or materials for the making of an improvement on real estate must take notice of the rights of persons in possession of lands, and the extent of their interest therein. Phillips, Mechanics' Liens, (3d ed.) §232.

As the decree in this case rests upon the third conclusion of law stated by the court, and as said conclusion is erroneous, the said decree being in accordance therewith is also erroneous and must be set aside.

Having reached this conclusion, other questions presented are of no controlling influence and will not therefore be discussed.

This cause is therefore reversed with directions to the

Sullivan Circuit Court to set aside its decree herein, to restate its third conclusion of law in harmony with this opinion, and to render its decree accordingly.