**STERN & SON, INC., Appellant (Plaintiff Below),**

v.

**GARY JOINT VENTURE; Creative Food Concepts, Inc.; Charles Evans; John W. Connor; Susan S. Connor; and Anthony Curvis, Appellees (Defendants Below).**

No. 45A03–8707–CV–201.

Court of Appeals of Indiana, Third District.

Nov. 7, 1988.

Michael F. Drewry, William J. Hancock, Lowe, Gray, Steele & Hoffman, Indianapolis, Barry D. Rooth, Herbert S. Lasser & Associates, P.C., Merrillville, for appellant.

William J. O'Connor, Patrick A. Schuster, O'Connor & O'Connor and Associates, Hammond, for appellee Gary Joint Venture.

HOFFMAN, Judge.

Stern & Son, Inc. (Stern) is appealing a summary judgment entered in favor of Gary Joint Venture (GJV). Both parties filed summary judgment motions, and the trial court found that Stern was not entitled to foreclose a mechanic's lien against property owned by GJV. In this case there is no substantial factual dispute, and on appeal the sole issue raised is: whether the court properly determined, as a matter of law, that Stern was not entitled to a mechanic's lien on GJV's property.

GJV is the owner of the South Lake Mall, located in Lake County, Indiana. In July 1984 GJV entered into a written, ten-year lease for a certain mall retail space

known as CU–705. The lessees were a group of individuals, Charles Evans; John Connor; Susan Connor; and Anthony Curvis (Tenants), and the lease provided that the space was to be turned into a "Pizza Mia," retail pizza restaurant.

Stern is a contractor primarily involved in commercial construction work. Stern had performed contract work for 65 other businesses in South Lake Mall and it also submitted the winning bid for construction of the pizza restaurant. The request for Stern to submit its bid came from, and the construction contract was ultimately signed with, an entity called Creative Food Concepts, Inc. (CFC). One of the Tenants, John Connor, signed the bid request on behalf of CFC, and it appears that several others, but not all Tenants, were also involved with CFC.

Additionally, the evidence indicates that before construction began, Stern was aware that CFC was not a tenant of South Lake Mall. Stern learned of this via a "Tenant Contractor's Agreement," which Stern received from GJV. This agreement contained a set of rules for contractors performing construction work in the mall, and a copy of the lease for CU–705 which listed the Tenants, and not CFC, as lessees.

Despite this difference, Stern began construction work under its original contract with CFC. The work site was regularly visited by GJV representatives who ensured that the mall's standards were adhered to, and work was completed in November 1984. The record is not clear on the reasons, but Stern was not paid for the work, and eventually, in January 1985, Stern filed a statement of intention to hold a mechanic's lien against GJV, as title holder of the property.

Ultimately, after extensive discovery, the trial court granted GJV's motion for summary judgment. The court based its ruling on the twin findings that GJV gave no more than inactive consent to the improvements, and that CFC had no legal interest in the property that could be encumbered.

Mechanic's liens were unknown at common law and are purely creatures of statute. As a consequence, mechanic's liens can only exist when the claimant has complied with the applicable statutory steps. The courts generally have followed a rule of strict construction in terms of adherance to the requirements for creating a lien, and a rule of liberal application of the remedial aspects of the mechanic's lien statutes. *Mid America Homes, Inc. v. Horn* (1979), 272 Ind. 171, 396 N.E.2d 879.

Indiana's Mechanic's Lien Statute is found at IND.CODE § 32–8–3–1 *et seq.* (1982). Before a mechanic's lien can attach to real estate, the statute's absolute first requirement is that the landowner consented to the improvements on which the lien is based. *St. Joseph's College et al. v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865. This consent must be more than inactive or passive consent and the lien claimant's burden to prove active consent is especially important when the improvements are requested by someone other than the landowner. This emphasis is due to the fact that without the landowner's active consent, a lien claimant can only maintain a lien to the extent of his customer's interest in the land. *Display Fixtures Co., etc. v. R.L. Hatcher, Inc.* (1982), Ind. App., 438 N.E.2d 26; *U.S. Lumber, etc., Co. v. River Park Land, etc., Co.* (1926), 85 Ind.App. 140, 151 N.E. 354. Additionally, it has long been the rule that a person about to improve real estate, must take notice of the extent of his customer's rights in the land and of the rights of those in possession. *Gardner v. Sullivan Mfg. Co.* (1921), 77 Ind.App. 60, 133 N.E. 31.

In the present case, Stern argues that GJV actively consented based on three facts. First, the lease between GJV and the Tenants contemplated that improvements would be made. Second, GJV approved the construction plans, and third, GJV representatives supervised the construction.

Initially, the cases make clear that a lease calling for improvements, even very detailed improvements, will not prove the sort of active consent needed to maintain a mechanic's lien. *See, Gardner v. Sullivan Mfg. Co., supra.* Next, in this

case, Stern acknowledges that GJV's review of the plans focused solely on technical matters and that this approval, as well as the onsite supervision was perfunctory, and the same that GJV had given on the 65 previous jobs that Stern had performed at the mall. In any event, while these facts certainly establish that GJV was aware of the construction, this awareness also does not establish the sort of active consent needed to maintain a mechanic's lien. *See, Woods v. Deckelbaum et al.* (1963), 244 Ind. 260, 191 N.E.2d 101.

 The exact nature and content of the owner's active consent in this context will vary from case to case; however, case law makes clear that the focus is not only on the degree of the owner's active participation in the decisions and the actual construction. Instead, the focus is also on how closely the improvements in question resemble a directly bargained-for benefit. *See, Amer. Islam Soc. v. Ulrich Dec. Inc., et al.* (1956), 126 Ind.App. 266, 132 N.E.2d 620. In the present case, GJV did not receive a direct benefit from the improvements Stern constructed. The benefits GJV received were indirect in that they enabled the Tenants to produce income with which they could make lease payments.

The present situation is very different from *Amer. Islam Soc., supra,* a case on which Stern heavily relies. In the prior case, the appellant Society was the lessor of a hotel, which lease called for extensive improvements, and after the lessee failed to pay the contractors, the Society was left with an extensively renovated hotel. Moreover, as the court noted, the Society's lessees were of "doubtful financial responsibility," whereas in the present case, GJV sought to protect itself by leasing to a group of individuals it had determined to be financially responsible. Stern now seeks to destroy GJV's bargained for protection, because it chose to contract with what amounts to a stranger. This intent is not within the purposes of the mechanic's lien statute and the trial court correctly found that Stern was not entitled to maintain its mechanic's lien.

There being no other error argued, this case is affirmed.

AFFIRMED.

GARRARD, P.J., and STATON, J., concur.