**R.T.B.H., INC., d/b/a McAndrews Windows & Glass Company, Appellant,**

v.

**SIMON PROPERTY GROUP, Appellee.**

No. 41A01–0512–CV–551.

Court of Appeals of Indiana.

June 27, 2006.

Christopher S. Roberge, Elizabeth A. Roberge, Eliza K. Bradley, Roberge & Roberge, Indianapolis, IN, Attorneys for Appellant.

Donald D. Levenhagen, Cohen & Malad, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

R.T.B.H., Inc., d/b/a McAndrews Windows & Glass Company ("McAndrews"), appeals the trial court's entry of partial summary judgment and final judgment in favor of Simon Property Group, L.P. ("Simon"). We affirm.

### Issue

The issue before us is whether the trial court properly concluded that McAndrews did not establish the existence of a valid mechanic's lien on Simon's interest in property it owns.

### Facts

On February 20, 2003, Dick's Sporting Goods, Inc. ("Dick's"), entered into a lease with Simon for property Simon owned at the Greenwood Park Mall. The lease was for the express purpose of Dick's demolishing an MCL Cafeteria and Service Merchandise store that were on the property and for constructing a new Dick's store. The lease was for an initial term of twenty years, with options to extend it for a total of fifty years. In order to secure the consent of Simon's mortgage lender for the lease, Simon agreed to complete construction of the new building if Dick's did not do so.

The lease required Simon to pay Dick's for part of the costs associated with demolishing the MCL Cafeteria and constructing a courtyard. Otherwise, Dick's bore the cost of the construction. Simon reviewed and approved the plans for the Dick's store prior to entering into the lease but indicated on the plans, "Landlord's review of contract documents is for design intent and criteria compliance only." App. p. 176. The building was to be surrendered to Simon when the lease ended.

Dick's retained S.C. Nestel, Inc. ("Nestel"), as general contractor for the construction project. Nestel, in turn, subcontracted window and glass work to McAndrews. McAndrews' representative interacted with representatives from Nestel and Dick's during construction of the store. There is no evidence that representatives from Simon ever interacted with any representative of McAndrews during the construction.

The new Dick's store was completed without Simon's intervention. However, Nestel refused to pay McAndrews for its work on the store. Nestel, in fact, filed a complaint for damages against McAndrews. McAndrews, in turn, filed a counterclaim against Nestel and against Simon, alleging that there was a valid mechanic's lien on the property and that it should be foreclosed. Simon moved for partial summary judgment, alleging that there was no valid mechanic's lien on its fee interest in the property. On August 15, 2005, the trial court entered partial summary judgment in favor of Simon, concluding that there was no valid mechanic's lien as to Simon, and directed the entry of final judgment in favor of Simon. On October 12, 2005, the trial court denied McAndrews' motion to correct error. McAndrews now appeals.

### Analysis

Summary judgment is appropriate only if the evidence shows there is no genuine

issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Beta Steel v. Rust,* 830 N.E.2d 62, 67 (Ind.Ct.App.2005). We must construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Beta Steel,* 830 N.E.2d at 67. "The review of a summary judgment motion is limited to those materials designated to the trial court and we must carefully review decisions on summary judgment motions to ensure that parties are not improperly denied their day in court." *Id.*

■ "A contractor may attach a mechanic's lien to real estate in order to recover his wages and costs." *Gill v. Pollert,* 810 N.E.2d 1050, 1058 (citing Ind. Code § 32–28–3–1). "Mechanic's liens were unknown at common law and are purely creatures of statute." *Cho v. Purdue Research Foundation,* 803 N.E.2d 1161, 1167 (Ind.Ct.App.2004). Courts generally have followed a rule of strict construction in terms of adherence to the requirements for creating such a lien, and a rule of liberal application of the remedial aspects of the mechanic's lien statutes. *Id.* at 1168.

■ In order for a mechanic's lien to attach to real estate, it is imperative that improvements to the property be made under the authority and direction of the landowner and something more than inactive or passive consent is required. *Gill,* 810 N.E.2d at 1058 (quoting *Woods v. Deckelbaum,* 244 Ind. 260, 264, 191 N.E.2d 101, 102 (1963) (quoting *Courtney v. Luce,* 101 Ind.App. 622, 626, 200 N.E. 501, 503 (1936))). A lien claimant's burden to prove

active consent to improvements is especially important when they are requested by someone other than the landowner. *Stern & Son, Inc. v. Gary Joint Venture,* 530 N.E.2d 306, 308 (Ind.Ct.App.1988). Without the landowner's active consent, a lien claimant can only maintain a lien to the extent of his customer's interest in the land. *Id.* A person about to improve real estate must take notice of the extent of his customer's rights in the land and of the rights of those in possession. *Id.*

We find this case to be practically indistinguishable from *Stern & Son,* which our supreme court cited with approval in *Gill. Gill,* 810 N.E.2d at 1059. There, Gary Joint Venture ("GJV"), a mall owner, leased property to a group of individuals. The express purpose of the lease was to turn the property into a pizza restaurant. A corporation formed by some of the tenants undertook to build the restaurant, and it contracted with Stern & Son for that purpose. GJV approved the construction plans, provided Stern & Son with a set of rules for contractors performing construction work in the mall, and representatives of GJV regularly visited the work site to ensure that the mall's standards were adhered to. The restaurant eventually was completed, but Stern & Son was not paid for its work. It sought to enforce a mechanic's lien against the property. The trial court granted GJV's motion for summary judgment, concluding that no mechanic's lien existed as to GJV's interest in the property.

On appeal, we affirmed the trial court on the basis that GJV had not actively consented to the construction.[1] *Stern & Son,* 530 N.E.2d at 308–09. Stern & Son had argued that three facts demonstrated that GJV had actively consented to the con-

---

1. The trial court had also based its ruling on the fact that the corporation formed by the tenants was not a party to the lease and had no legal interest in the property that could be encumbered. We did not rely on or discuss in any detail this basis for the trial court's ruling in our opinion.

struction: first, the lease contemplated that the restaurant would be built; second, GJV approved the construction plans; and third, GJV representatives supervised the construction. *Id.* at 308. We rejected all three contentions.

We first cited the existence of long-standing case law holding that "a lease calling for improvements, even very detailed improvements, will not prove the sort of active consent needed to maintain a mechanic's lien." *Id.* (citing *Gardner v. Sullivan Mfg. Co.*, 77 Ind.App. 60, 133 N.E. 31 (1921)). Next, we noted that GJV's approval of the plans was perfunctory and technical, as was the onsite construction supervision. *Id.* at 309. We stated, "while these facts certainly establish that GJV was aware of the construction, this awareness also does not establish the sort of active consent needed to maintain a mechanic's lien." *Id.*

> We also made the following observation: The exact nature and content of the owner's active consent in this context will vary from case to case; however, case law makes clear that the focus is not only on the degree of the owner's active participation in the decisions and the actual construction. Instead, the focus is also on how closely the improvements in question resemble a directly bargained-for benefit. In the present case, GJV did not receive a direct benefit from the improvements Stern constructed. The benefits GJV received were indirect in that they enabled the Tenants to produce income with which they could make lease payments.

*Id.* (citiation omitted).

Here, much like in *Stern & Son*, the fact that the lease between Simon and Dick's called for the construction of a new building does not mean that Simon actively consented to improvements provided by McAndrews. The only designated evidence in the record is that Simon had no interaction with McAndrews during the course of construction, nor for that matter is there any evidence that Simon had any significant interaction with the general contractor, Nestel. It also appears from the record that Simon's approval of the design plan for the Dick's store was largely technical and perfunctory, as was the case in *Stern & Son*, as evidenced by the stamp placed on the design by Simon, "Landlord's review of contract documents is for design intent and criteria compliance only." App. p. 176. Additionally, evidence that Simon was aware of the construction of the Dick's store, and even McAndrews' involvement in it, is not enough to establish "the sort of active consent needed to maintain a mechanic's lien." *Stern & Son*, 530 N.E.2d at 309.

Also as in *Stern & Son*, Simon did not receive a direct benefit from the construction of the Dick's store. The benefits it received from the construction of the store were indirect, including some assurance that Dick's would be able to pay the rent required by the lease by its construction and operation of the store, and whatever tangential value the new store would have to Greenwood Park Mall as a whole. The fact that the building would revert to Simon at the conclusion of the lease, which means anywhere from twenty to fifty years in the future, cannot be fairly construed as a primary bargained-for purpose of the lease or a direct benefit to Simon. In any event, it is difficult to conceive that Dick's would physically move the 75,000–square foot store or intentionally destroy it before the conclusion of the lease; it is natural to expect that Simon would take possession of the structure at that time.

One aspect of this case that was not present in *Stern & Son* is that Simon entered into an agreement with its mortgage lender to complete construction of the store if Dick's did not do so. We

agree with Simon that this contingency agreement, which contingency never came to pass, is irrelevant to the question of whether Simon actively consented to the improvements provided by McAndrews. The actual facts of this case are that Simon did not participate actively in the construction of the Dick's store and made no payments for any construction to either Nestel or McAndrews.[2]

McAndrews contends that this case is controlled by our opinion in *American Islam Society v. Bob Ulrich Decorating*, 126 Ind.App. 266, 132 N.E.2d 620 (1956). In that case, the American Islam Society ("the Society") owned a hotel and leased it to two individuals. The lease was expressly conditioned upon the lessees making repairs and improvements that were explicitly set forth in the lease. The lessees hired several contractors to perform the required improvements but failed to pay them for their work. Shortly after the work was completed, the lessees defaulted on the lease and possession of the hotel reverted to the Society. The trial court found that a mechanic's lien existed against the property and ordered its foreclosure to pay the amounts owed to the contractors.

We affirmed, concluding there was sufficient evidence the Society had actively consented to the improvements. *American Islam Society*, 126 Ind.App. at 271, 132 N.E.2d at 622. Although there are some superficial similarities between *American Islam Society* and the one before us now, there is a key difference that we noted in the following paragraph:

> It seems to us on the record herein that the appellant leased its building to ten-

ants of doubtful financial responsibility and that the lease required them to make improvements amounting to several thousand dollars. The lease was surrendered shortly thereafter and the appellants have obtained the benefit of the improvements. The facts illustrate the justice of the rule applied herein. To hold otherwise would permit appellant to unjustly enrich itself at the expense of appellees.

*Id.* at 272, 132 N.E.2d at 623. There is no indication here that the entity to whom Simon leased the property, Dick's, is of "doubtful financial responsibility." The lease is still in effect and it is Dick's, not Simon, who currently is enjoying the direct benefit of the construction performed by McAndrews. Simon has not "unjustly enriched" itself at McAndrews' expense. We conclude, as we did in *Stern & Son*, that the present case is distinguishable from *American Islam Society*. See *Stern & Son*, 530 N.E.2d at 309. The trial court correctly concluded that, as a matter of law, McAndrews failed to establish the existence of a mechanic's lien against Simon's ownership interest in the property.

### Conclusion

The trial court properly granted partial summary judgment and final judgment in favor of Simon. We affirm.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

2. A landowner's direct payment to a contractor providing improvements frequently has been cited as a factor supporting the establishment of a mechanic's lien against the landowner's interest in the property. *See Mann v. Schnarr*, 228 Ind. 654, 669–70, 95 N.E.2d 138, 144 (1950); *Better Homes Co. v. Hildebrand Hardware Co.*, 202 Ind. 6, 11, 171 N.E. 321, 322–23 (1930); *O'Hara v. Architects Hartung & Assoc.*, 163 Ind.App. 661, 666, 326 N.E.2d 283, 287 (1975).